STATE OF DELAWARE v. JAMES C. BOYD.

(*September* 19, 1952.)

HERRMANN, J., sitting.

*Louis J. Finger,* Deputy Attorney-General, for the State.

*Frank J. Miller* for the Defendant.

Superior Court for New Castle County, No. 4, March Term, 1952.

HERRMANN, J.:

The defendant was indicted for robbery of Marion Wells. Upon trial by jury, a verdict of guilty was returned.

The State produced a police detective for the purpose of corroborating Wells' identification of the defendant at the trial. The State's attorney was seeking to show that Wells had identified the defendant as his assailant immediately after the alleged robbery. At this point in the trial, the following exchange took place:

"Q. Did Wells describe his assailant?   A. He did.

"Q. Did he identify him in any other way?   A. He did.

"Q. In what way did he identify him? A. I returned to Wells' home at about twelve noon with the picture of James C. Boyd, alias 'Curley'. This picture is under our file number 7868 and he identified this picture.

"Mr. Miller: I object to that and move for a mistrial on the ground that it is prejudicial."

The motion for mistrial was denied. The Court immediately instructed the jury to disregard the detective's testimony regarding the alias and the source of the picture. After the guilty verdict was returned, the defendant moved for new trial. The ground for the motion is that the testimony volunteered by the detective was prejudicial to the extent that a fair and impartial trial was not accorded to the defendant.

The only reasonable inference which could be drawn from the detective's voluntary statement was that the defendant had previously been in trouble with law enforcement authorities. This testimony was incompetent and prejudicial not only because of the reference to the police file but also because of the reference to an alias. To the average person both references carry the connotation of unlawful activities. The impropriety of the testimony may have been cured substantially if the State had proved prior conviction of a felony as is permitted by Statute to attack credibility. *Code* 1935, § 4689. The State made no attempt to show a prior criminal record in the manner authorized by law.

I am unable to say that the prejudicial statement was harmless. This is not a case where the evidence of guilt is strong and convincing. Indeed, the State adduced no more than the minimum evidence necessary to support a conviction. The ultimate task of the jury in the instant case was to choose between the word of the accused and the word of his accuser. There was no substantial corroboration of the testimony of either of them. It is not unreasonable to assume that the prejudicial statement affected the defendant's credibility in the eyes of one or more of the jurors. Since the weight of the evidence was in such close balance, it cannot be said with certainty that an inference of a

prior criminal offense, or the suspicion thereof, was not placed in the scales when the jury decided to disbelieve the defendant.

In cases of this kind, it is extremely difficult to formulate any broad rule for the application of the doctrine of harmless error in relation to the exercise of the Court's discretion upon a motion for mistrial. It can only be said that the determination of the question as to whether a prejudicial statement violates the defendant's substantial rights depends in the final analysis upon the facts of the individual case.[1] In *Kotteakos v. United* Supreme Court of the United States stated:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, * * *. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

██ Where, as here, the evidence of guilt is no more than the minimum required to support a conviction, there is always the possibility, and often the probability, that a prejudicial statement affected the jury to the detriment of the defendant. I think that when the evidence of guilt is in close balance with evidence of innocence, the Court must give to the de-

---

[1] The State relied upon the following authorities: *Christian v. State*, 30 *Ga. App.* 292, 118 *S. E.* 407; *Packard v. United States, D. C. Mun. App.*, 77 *A.* 2d 19; *State v. Cunningham*, 173 *Or.* 25, 144 *P.* 2d 303; *Flournoy v. State*, 82 *Ga. App.* 518, 61 *S. E.* 2d 556; *Hunter v. State*, 193 *Md.* 596, 69 *A.* 2d 505. In each of those cases the evidence of guilt was far more cogent than in the instant case. *States*, 328 *U. S.* 750, 66 *S. Ct.* 1239, 1248, 90 *L. Ed.* 1557, the

fendant the benefit of any reasonable doubt regarding the impact of prejudicial testimony upon the fairness of his trial. I cannot say with "fair assurance" that members of the jury were not substantially swayed by the detective's improper testimony when they weighed the defendant's word against that of his accuser. Therefore, it is impossible for me to conclude that the defendant's right to a fair trial was not substantially impugned by the incompetent and prejudicial testimony. Under the facts of this case, the doubt as to the influence of the improper testimony is not dispelled by the fact that the jury was admonished by the Court to disregard it. *Commonwealth v. Blose*, 160 *Pa. Super.* 165, 50 *A*. 2d 742.

Accordingly, the motion for new trial will be granted.